

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

---

Rajeev R. Raghavan
Assistant United States Attorney
Rajeev.Raghavan@usdoj.gov

Mailing Address:
6500 Cherrywood Lane, Suite 200
Greenbelt, MD 20770-1249

Office Location:
6406 Ivy Lane, 8th Floor
Greenbelt, MD 20770-1249

DIRECT: 301-344-4031
MAIN: 301-344-4433
FAX: 301-344-4516

April 13, 2022

Ellie C. Marranzini, Esq.
Office of the Federal Public Defender
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770

FILED _____
LOGGED _____

MAY 2 3 2022

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

Re:  United States v. Thomas Patrick Connally, Jr.,
     Criminal No. PX-22-0172

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Thomas Patrick Connally, Jr. (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **May 3, 2022, at 5 p.m.**, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense of Conviction

1.  The Defendant agrees to waive indictment and plead guilty to Count One of the Information to be filed against him, which charges the Defendant with Threats Against a Federal Official, in violation of 18 U.S.C. §§ 115(a)(1)(B) and 115(b)(4). The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

### Elements of the Offense

2.  The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:  That on or about the time alleged in the Information, in the District of Maryland, (i) the Defendant threatened to murder the individual named in the Information; (ii) that at the time of the alleged threat, the individual was a federal official; and (iii) that the Defendant acted with intent to impede, intimidate, or interfere with that official while the official was engaged in the performance of his or her official duties or with the intent to retaliate against the official on account of the performance of his or her official duties.

Rev. August 2018

Penalties

3. The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. §§ 115(a)(1)(B), 115(b)(4) | N/A | 10 years | No More Than 3 years | $250,000 | $100 |

a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

    a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to have a grand jury consider the charges in the Information. The Defendant would also have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

    e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.  If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.  This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. Pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 1B1.2(c), the offenses set forth in the Statement of Facts involves threats to more than one individual. Therefore, U.S.S.G., Chapter 3, Part D, shall be applied as if the threat to each person had been contained in a separate count of conviction. The threats are grouped as follows:

### Group One – Threats against Dr. Anthony Fauci

a.  This Office and the Defendant further agree that the applicable base offense level is **12** pursuant to U.S.S.G. § 2A6.1(a)(1).

b.  A **2**-level enhancement applies pursuant to U.S.S.G. § 2A6.1(b)(2), because the offense involved more than two threats.

c.  A **6**-level enhancement applies pursuant to U.S.S.G. § 3A1.2(b), because the victim was a government officer or employee or a member of the immediate family of a

government officer or employee, the offense of conviction was motivated by such status, and the applicable Chapter Two guideline is from Chapter Two, Part A (Offenses Against the Person).

<u>Group Two – Threats against Dr. Francis Collins</u>

   d. This Office and the Defendant further agree that the applicable base offense level is **12** pursuant to U.S.S.G. § 2A6.1(a)(1).

   e. A **2**-level enhancement applies pursuant to U.S.S.G. § 2A6.1(b)(2), because the offense involved more than two threats.

   f. A **6**-level enhancement applies pursuant to U.S.S.G. § 3A1.2(b), because the victim was a government officer or employee or a member of the immediate family of a government officer or employee, the offense of conviction was motivated by such status, and the applicable Chapter Two guideline is from Chapter Two, Part A (Offenses Against the Person).

<u>Group Three – Threats against Dr. Rachel Levine</u>

   g. This Office and the Defendant further agree that the applicable base offense level is **12** pursuant to U.S.S.G. § 2A6.1(a)(1).

   h. A **2**-level enhancement applies pursuant to U.S.S.G. § 2A6.1(b)(2), because the offense involved more than two threats.

   i. A **6**-level enhancement applies pursuant to U.S.S.G. § 3A1.2(b), because the victim was a government officer or employee or a member of the immediate family of a government officer or employee, the offense of conviction was motivated by such status, and the applicable Chapter Two guideline is from Chapter Two, Part A (Offenses Against the Person).

<u>Group Four – Threats against Individual B</u>

   j. This Office and the Defendant further agree that the applicable base offense level is **12** pursuant to U.S.S.G. § 2A6.1(a)(1).

   k. A **6**-level enhancement applies pursuant to U.S.S.G. § 3A1.2(b), because the victim was a government officer or employee or a member of the immediate family of a government officer or employee, the offense of conviction was motivated by such status, and the applicable Chapter Two guideline is from Chapter Two, Part A (Offenses Against the Person).

<u>Group Five – Threats against Religious Leader A</u>

   l. This Office and the Defendant further agree that the applicable base offense level is **12** pursuant to U.S.S.G. § 2A6.1(a)(1).

   m. A **2**-level enhancement applies pursuant to U.S.S.G. § 2A6.1(b)(2), because the offense involved more than two threats.

Grouping

n. Pursuant to U.S.S.G. § 3D1.2, since the threats against each individual do not involve the same victim, are not part of the same act or transaction, and the offenses are offenses in Chapter Two, Part A, they do not group.

o. Pursuant to U.S.S.G. § 3D1.4(a), because Group One, Two, Three, and Four are equally serious, or between 1 and 4 levels less serious than each other, three additional units are counted for Group Two, Three, and Four. Additionally, because Group Five is 5 to 8 levels less serious than the Group with the highest offense level (Group One), one-half additional unit is counted for Group Five, pursuant to U.S.S.G. § 3D1.4(b). Because there are a total of three-and-a-half additional units, the offense level is increased by **4** levels, for a total offense level of **24**.

p. This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1**-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

7. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

Obligations of the Parties

9. At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence that may be above or below the United States Sentencing Guidelines, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office

Rev. August 2018

or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Information. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

10. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

   b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of restitution, and term or condition of supervised release), except as follows:

   i. The Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds any sentence within the advisory guidelines range resulting from an offense level of **21**; and

   ii. This Office reserves the right to appeal any term of imprisonment to the extent that it is below any sentence within the advisory guidelines range resulting from an offense level of **21**.

   c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

11. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

12. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of

the Defendant's right, title, and interest in any money, property, and/or assets derived from or obtained by the Defendant as a result of, the Defendant's illegal activities.

13.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Defendant's Conduct Prior to Sentencing and Breach

14.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

15.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

16.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding

prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

17.  This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

(cont'd)

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

Rajeev R. Raghavan
Jessica C. Collins
Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

4/27/2022
Date

Thomas Patrick Connally, Jr.

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

4/27/22
Date

Ellie C. Marranzini, Esq.
Rev. August 2018

10

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

### I. Threats to Dr. Fauci

On December 28, 2020, at approximately 10:32 p.m. and 10:34 p.m. the defendant **Thomas Patrick Connally, Jr.** ("**CONNALLY**") used the email account naturtheateralhena@protonmail.com to send two emails to Dr. Anthony Fauci at Dr. Fauci's email address at the National Institutes of Health ("NIH"). Dr. Fauci is the current Director of the National Institute of Allergy and Infectious Diseases ("NIAID"). The NIAID and the NIH are located in Bethesda, Maryland. The emails were titled "Hope you get a bullet in your compromised satanic skull today." In these emails, **CONNALLY** threatened Dr. Fauci with physical violence based on Dr. Fauci's prior work in the federal government combatting the AIDS epidemic. **CONNALLY** also threatened Dr. Fauci with physical violence regarding a test to detect COVID-19 that Dr. Fauci publicly discussed in his role as the Director of the NIAID. Specifically, **CONNALLY** wrote to Dr. Fauci: "I would encourage you[] to put a [gun] in your mouth and pull the trigger, you disgusting piece of elf garbage, because you will wish you were dead when I'm finished bludgeoning your disgusting left freemason skull into the pavement."

On April 24, 2021, at approximately 10:05 p.m., Dr. Fauci received a third threatening email from **CONNALLY**. In this email, titled "6 mandatory shots to your disgusting elf skull," **CONNALLY** threatened Dr. Fauci with death stating: "You will [*sic*] hunted, captured, tortured and killed, you sickening, vile, disgusting liar and fraud, you vile, disgusting satanic elf." **CONNALLY** then sent a series of six emails threatening Dr. Fauci and his family. As part of this email chain, **CONNALLY** made the following threats:

- "You and your entire family will be dragged into the street, beaten to death, and set on fire."
- "[Y]ou and your entire family of dog shit are about to be dragged into the street and slaughtered."
- "You and your dog shit family will be killed."
- "You and your whole disgusting family will be dragged into the street and lynched."
- "You and your whole family will be strung up in the street, you vile, lying fraud elf."
- "I'm going to break every bone in your disgusting elf skull."

On May 27, 2021, at approximately 7:53 a.m., **CONNALLY** sent a threatening email to Dr. Fauci's email address at NIH entitled "Cutting your scalp off and sewing it onto a rat." Two months later, on July 21, 2021, at approximately 5:14 p.m. and 5:16 p.m., **CONNALLY** sent two emails to Dr. Fauci's email address at NIH. **CONNALLY** stated:

Rev. August 2018

- "I will smash every bone in your worthless, venal, criminal elf skull. I will slaughter your entire family. You will pay with your childrens' blood for your crimes, you sickening fucking piece of shit."
- "I would encourage you to buy a gun, stick the barrel in your filthy elf maw, and pull the trigger, because it will be better for you than being hunted, tortured, beaten, enslaved, and given six mandatory shots in the back of your worthless elf piece of shit skull."

On July 25, 2021, at approximately 12:17 p.m., **CONNALLY** sent a threatening email to Dr. Fauci's email address at NIH entitled "Bullet In Your Head Under Active Consideration." In the body of the email **CONNALLY** threatened: "You will pay with blood for your crimes, you dirty LIAR AND FRAUD."

**CONNALLY** sent the threats to Dr. Fauci with the intent to intimidate or interfere with his engagement in the performance of his official duties and with the intent to retaliate against Dr. Fauci on account of the performance of his official duties, including discussing COVID-19 and its testing and prevention.

Each of **CONNALLY**'s emails to Dr. Fauci that threatened Dr. Fauci and his immediate family with murder and assault would constitute a separate violation of 18 U.S.C. § 115(a)(1)(B).

## II.    Threats to Other Officials and Individuals

Starting at approximately 9:34 p.m. on April 24, 2021, **CONNALLY** sent four threatening emails to the NIH email address for Dr. Francis Collins, the then-Director of the NIH. **CONNALLY** threatened to "smash every tooth out of your faggot skull" if Dr. Collins did not stop speaking about the need for "mandatory" COVID-19 vaccinations. The following three emails threatened Dr. Collins and his family with physical assault and death:

- "You, your disgusting wife [] will have the teeth smashed out of its worthless kike skull if you say ONE MORE WORD about 'mandatory vaccines.'"
- "Your daughters will be hunted, captured, tortured and shot in the back of the head if you say one more word about 'mandatory vaccines' you vile piece of disgusting crypto-kike freemason DOG SHIT. Your daughters will be tied to trucks and have their arms and legs ripped off while you watch."
- "One more word out of your kike snout about 'mandatory' anything, and your daughters [] will have their skulls smashed with crowbars."

**CONNALLY** sent the threats to Dr. Collins with the intent to intimidate or interfere with his engagement in the performance of his official duties and with the intent to retaliate against Dr. Collins on account of the performance of his official duties, including discussing COVID-19 and its testing and prevention. If charged, the four emails threatening Dr. Collins and his immediate family with murder and assault would each constitute a separate violation of 18 U.S.C. § 115(a)(1)(B).

On November 24, 2020, **CONNALLY** sent a series of six threatening emails to Dr. Rachel Levine, then Secretary of Health for the State of Pennsylvania, at Dr. Levine's email account at the Pennsylvania Department of Health. **CONNALLY** sent these six threatening emails using naturtheateralhena@protonmail.com. The subject lines and body of the emails threatened Dr. Levine with physical violence and death, including:

- "You are disgusting sickening ghoul that belongs in a garbage dump."
- "I love violence against kike dog shit!!! Open season on kike garbage!!!!!!!"
- "I will do all I can to eliminate kike dog shit like you from this plane, by whatever means necessary."

Although uncharged relevant conduct, the emails sent by **CONNALLY** that threatened physical violence and death to Dr. Levine would constitute separate violations of 18 U.S.C. § 875(c).

Similarly, on August 31, 2020, **CONNALLY** sent an email to Individual A who is the Director of Communications for the Massachusetts Department of Public Health. **CONNALLY** sent this threatening email using naturtheateralhena@protonmail.com. The email contained a threat of physical violence and death for Individual B, the Massachusetts Department of Public Health Director: "Tell your friend [Individual B] he's getting a mandatory lead injection between his disgusting kike maggot eyes." This email would constitute a violation of 18 U.S.C. § 875(c) if charged.

Finally, on April 24, 2021, **CONNALLY** sent a series of four threatening emails to four individuals who work for Entity A, which is a religious institution located in Newark, New Jersey. **CONNALLY** sent these four threatening emails using naturtheateralhena@protonmail.com. In the four emails, **CONNALLY** threatened physical violence and death to a religious leader (Religious Leader A), stating:

- "You better send this faggot back to Turks and Caicos, because this pig is going to be tortured and killed on my property as part of the New Inquisition to purge the Church of filthy diseased pieces of kike animal shit like [Religious Leader A]."
- "Filthy diseased kike faggot pederast [Religious Leader A] will have its disgusting kike face smashed with a baseball bat."
- "This piece of faggot kike animal shit is going to die a very very very painful death. Because he's too cowardly to post his email address, could you please forward this info to him, if he's not too busy being fellated by small children?"
- "Before tying dirty kike faggot pederast criminal piece of shit [Religious Leader A] to a stake and setting this diseased piece of faggot garbage on fire, we're going to tie a rainbow flag around its neck and break it."

Each of the four emails that were sent by **CONNALLY** threatening physical violence and death to Religious Leader A would constitute separate violations of 18 U.S.C. § 875(c), if charged.

CONNALLY registered naturtheateralhena@protonmail.com with ProtonMail on February 4, 2018. CONNALLY used the email address naturtheateralhena@protonmail.com to register an account with Instagram on May 14, 2020. The Instagram account had the username "Naturtheater Alhena." CONNALLY also registered an account with Apple Inc. using naturtheateralhena@protonmail.com. On July 27, 2021, law enforcement executed search warrants at CONNALLY's rental residence in Snowshoe, West Virginia, as well as on his vehicle. Pursuant to the search warrants, law enforcement seized a number of CONNALLY's electronic devices from the rental residence, including the following:

- an Apple Macbook Pro Laptop, serial number C02HK24XDV7P;
- an Apple Macbook Pro Laptop, serial number C02RJ19GG8WL;
- an Apple A1286 Laptop, serial number C02H61ZLDV7M;
- an Apple A1707 Laptop;
- an Apple A2131 Laptop, serial number C02ZWBUSMDGR;
- an AT&T Phone Model Number, serial number 863382047757351; and
- a Nokia TA-1153 Smartphone, serial number 352910100099682.

CONNALLY had linked his Apple account that used the naturtheateralhena@protonmail.com email address to the two Apple MacBook Pro laptops.

SO STIPULATED:

_____
Rajeev R. Raghavan
Jessica C. Collins
Assistant United States Attorneys

_____
Thomas Patrick Connally, Jr.
Defendant

_____
Ellie Q. Marranzini, Esq.
Counsel for Defendant